IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KATRINN BOWDEN MEEKER, DEBTOR ) | Bankruptcy Case: 10-04927 MAM |
| ) | |
| CHAPTER 13 | |

| | |
|---|---|
| KATRINN BOWDEN MEEKER, DEBTOR ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | Adversary Proceeding Number: 11:00040 |
| ) | |
| SIROTE & PERMUTT PC, LENDER ) | |
| PROCESSING SERVICES, INC., LPS ) | |
| DEFAULT SOLUTIONS, LLC ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS LENDER PROCESSING SERVICES, INC. AND LPS DEFAULT SOLUTIONS, INC.'S REPLY TO PLAINTIFF'S RULE 56(d) RESPONSE TO LPS MOTION FOR SUMMARY JUDGMENT**

COME NOW the Defendants, **Lender Processing Services, Inc.** [1] **and LPS Default Solutions, Inc.** (unless individually identified, hereinafter collectively referred to as "LPS") and submit this reply to Plaintiff's Rule 56(d) response to the LPS Motion for Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding brought by Debtor Katrinn Bowden Meeker (hereinafter "Debtor" or "Plaintiff") alleges that the law firm of Sirote & Permutt, P.C.

---

[1] LPS Default Solutions, Inc. is an indirect subsidiary of Lender Processing Services, Inc.

{01577428.1/1321-0015}

1

("Sirote") has an undisclosed legal fee splitting arrangement with LPS and that these agreements also somehow constitute the unauthorized practice of law by LPS. The Defendants deny the Plaintiff's allegations in their entirety and demand strict proof thereof. <u>Specifically and perhaps most importantly, Sirote paid no fee to LPS with respect to this Debtor's bankruptcy case.</u> *See*, [Affidavit of Michael Cloin and the Declaration of Donald M. Wright]. <u>Moreover, LPS did not provide Sirote with any technology or administrative services related to the Meeker bankruptcy.</u> Id. Because no such fee was paid by Sirote to LPS relative to this Debtor, and because LPS provided no services to Sirote related to the Debtor's bankruptcy case, the Plaintiff can prove no facts which would give rise to any liability in the case. Given the above, there is simply no reason to waste the time and resources of the parties, the attorneys involved, and this Court with unnecessary discovery when it is clear from the outset that this Plaintiff has no claim.

For this reason, on May 24, 2011, LPS filed a Motion for Summary Judgment [Doc. 14] attaching the Affidavit of Michael Cloin and incorporating by reference the Declaration of Donald M. Wright. Plaintiff's counsel filed a response under Rule 56(d)[2], requesting that the Motion be stayed so that he can conduct unspecified (and potentially unlimited) discovery[3]. The Plaintiff's request is based entirely upon speculative, misleading and conclusory accusations by Plaintiff's counsel, including an Affidavit

---

[2] Bankruptcy Rule 7056 states that F.R. Civ.P. 56 applies in adversary proceedings. In 2010, Fed. R. Civ. P. 56 was amended. The Committee Comments addressing the revision of 56 (d) state as follows: "**Subdivision (d).** Subdivision (d) carries forward *without substantial change* the provisions of former subdivision (f)." (emphasis added).

[3] While the responsive pleading to the Defendants' respective Motions for Summary Judgment only seek relief pursuant to Rule 56(d), the body of the Plaintiff's response argues the material submitted proves that LPS referred the Plaintiff's file to Sirote. While the undersigned disagrees the submitted material proves any of the alleged Counts of the Complaint, if the Plaintiff's "proof" has already been submitted to this Court, why is further discovery needed?

supported by immaterial, irrelevant, unauthenticated and inadmissible exhibits.[4] The Plaintiff does not satisfy her burden under Rule 56(d) to warrant additional discovery, and thus Plaintiff's Rule 56(d) request should be denied.

Additionally, Plaintiff's counsel notes that filing a Motion for Summary Judgment at this stage in the litigation is a "highly unusual ... unique defense strategy." [Doc. 23-1 at ¶ 74). However, the Eleventh Circuit has mandated: "there is no reason to assume that a district judge will ... refuse to rule on a motion for summary judgment at an early stage of the litigation if the moving party clearly appraises the court that a prompt decision will likely avoid unnecessary discovery. In fact, [the court] expect[s] that district judges will be open to such motions." Cordoba v. Dillard's Inc., 419 F.3d 1169, 1188 (11th Cir. 2005). As a result, it remains these Defendants' right to proceed in this manner.

## THE FORMER RULE 56(f) STANDARD - NOW RULE 56(d).

Under former Rule 56(f), the Court may grant a continuance to prevent discovery if the nonmovant establishes that he "cannot present facts essential to justify its opposition" to the Motion for Summary Judgment. Fed.R.Civ.P. 56(f). Subsection (f) allowed a party who has "no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof." Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525 (11th Cir. 1983). It is clear that the Plaintiffs cannot rest on "vague assertions that additional discovery will produce needed, but unspecified, 'facts,' but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of an absence of a genuine issue of fact. Wallace, 703 F.2d

---

[4] LPS has filed a Motion to Strike the Affidavit of Nick Wooten. The arguments in this Memorandum are without waiver of the contentions in the Motion to Strike.

{01577428.1/1321-0015}

3

at 527 (internal citations omitted). "If the Court is satisfied with a nonmovant's explanations, the Court may deny the [summary judgment] motion without prejudice or simply order a continuance." Id.

Moreover, the district court is not required to await completion of discovery before ruling on a Motion for Summary Judgment. As the Eleventh Circuit held, it would be inappropriate to limit summary judgment cases where discovery is complete in light of the valuable remedy offered by summary judgment, and that whether to grant a continuance pursuant to former Fed. R. Civ. P 56(f) is within the "sound discretion of the trial judge." Wallace, 703 F.2d at 528. In the present case, the Plaintiff will uncover no evidence supporting the very basic assertion they have made in this case, that Sirote has "split" with LPS any fee related to this Debtor's bankruptcy. Despite attaching hundreds of pages of depositions from unrelated lawsuits and the public filings of LPS, the Plaintiff cannot and does not identify with sufficient specificity the discovery she desires, nor the specific evidence she contends will be obtained, that will be sufficient to contradict the testimony submitted by LPS. Plaintiff is merely attempting a fishing expedition to try and establish a class of putative plaintiffs, starting with a Plaintiff who simply has no claim against LPS. Rule 56(d) does not exist for such purposes.

**THIS COURT SHOULD DISREGARD PLAINTIFF'S ATTEMPTS TO SHIFT FOCUS AWAY FROM THE CENTRAL ISSUE IN THIS CASE.**

Plaintiff's counsel purports to support his request for discovery upon matters wholly unrelated to the claims of this Plaintiff. This "support" includes mischaracterized excerpts from public reports and news articles, unsupported war stories from unrelated cases, and a Rule 30(b)(6) deposition of LPS taken in a different lawsuit, related to different services, provided under a different contract, with a different loan servicer,

concerning a different debtor, and related to a non-bankruptcy matter (i.e., foreclosure). On the contrary, the Plaintiff herself must possess the claim alleged against LPS. Kly v. Humanna, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004); Walker v. Jim Dandy Co., 747 F.2d 1360, 1363 (11th Cir. 1984). Moreover, for a district court to certify a class action, the named claimants must have standing, and the putative class must meet each of the requirements specified in Fed. R. Civ. P. 23(a), as well as at least one of the requirements set forth in Rule 23(b).

It is clear that Plaintiff's request under Rule 56(d) is not limited to those matters related to the pending Motion for Summary Judgment, but rather, is an attempt to launch into a broad discovery fishing expedition to attempt to create a claim against LPS. The central issue in this litigation is the allegation that Sirote and LPS "split" a legal fee earned by Sirote and paid by their client for legal services offered in the Plaintiff's underlying bankruptcy. None of the so-called "evidence" submitted by the Plaintiff shows how the Plaintiff intends to prove this claim. Moreover, the evidence submitted by LPS and corroborated by Sirote is that LPS had nothing to do with this Plaintiff's bankruptcy and that Sirote paid no fee to LPS. It is worth repeating the above-referenced citation from the 11th Circuit, "[i]f the Court is satisfied with a nonmovant's explanations, the Court may deny the [summary judgment] motion without prejudice or simply order a continuance." Wallace, supra at 527. In the end, Plaintiff has failed to meet their burden under Rule 56(d), and should not be permitted the potentially never-ending discovery they seek.

# THE EVIDENCE SUBMITTED IN SUPPORT OF LPS'S MOTION FOR SUMMARY JUDGMENT IS CLEAR AND NOT CONTRIDICTED BY THE PLAINTIFF. MOREOVER, THE EVIDENCE THAT WAS SUBMITTED BY PLAINTIFF IS IRRELEVANT TO THE PLAINTIFF'S CLAIMS.

This adversary proceeding arises out of the filing of a Motion for Relief from the Automatic Stay in the Plaintiff's Chapter 13 bankruptcy case, and fees associated with that motion. Plaintiff alleges that LPS was engaged in improper fee splitting with Sirote & Permutt, PC, related to certain alleged fees paid under network agreements and administrative services agreements. In support of its Motion for Summary Judgment, LSP submitted the Affidavit of Michael Cloin, which provides in part:

> According to the Court file, it appears that Wells Fargo Bank, N.A. acted as the servicer of this particular Debtor's loan. At all times relevant to this case, Wells Fargo, did not utilize the LPS Default System or any administrative default services in relation to this particular Debtor. Moreover, LPS Default did not provide any System technology to Sirote & Permutt, P.C. in relation to this particular Debtor.
>
> Finally, in this particular Debtor's case, LPS Default did not provide any administrative default services to Sirote & Permutt, P.C. and has received no payment for any such services.

Plaintiff's counsel has attacked LPS, on the one hand, by claiming that Mr. Cloin's Affidavit is false, and on the other hand, by suggesting that Plaintiff has evidence that LPS does in fact engage in the conduct alleged in the Complaint. However, Plaintiff offers nothing more than conclusory accusations drawn from mischaracterized statements, and taken out of testimony and documents wholly unrelated to the claims in this case. The Plaintiff cannot provide any evidence to support her claims that LPS or LPS Default performed any services related to the Motion for Relief from Automatic Stay at issue in this case, or that Sirote paid a fee to LPS related to the Plaintiff's

{01577428.1/1321-0015}

6

bankruptcy. As such, the Court should deny Plaintiff's Rule 56(d) request, and grant summary judgment in favor of LPS and LPS Default.

### A. LPS's 2009 and 2010 Annual Statement Filed with the Securities and Exchange Commission and other Wells Fargo documents.

The Plaintiff attempts to "prove" that Wells Fargo subscribed to the services at issue in this case by submitting LPS's filings with the Securities and Exchange Commission, which references Wells Fargo as a client of LPS. In an effort to make this point, Plaintiff quoted one sentence out of the 2010 Annual Statement, which reads:

> For example, in 2010, our largest customer, Wells Fargo Bank, N.A., ("Wells Fargo") accounted for more than 20.0 % of our aggregate revenue and more than 12.2 % of the revenue from each of our Technology, Data and Analytics and Loan Transaction Services segment, respectively.

[Doc. 23-7, page 21 of 112].

Notably, LPS does not deny, and never did deny, that Wells Fargo is an LPS client. In fact, the very next sentence of the same report – although not quoted by Plaintiff – goes on to clarify that LPS offers different and diverse services to these customers, including Wells Fargo, providing:

> However, these revenues in each case are spread across a range of services, and are subject to multiple separate contracts. . . the diversity of our services provided to each of the customers reduces the risk that we would lose all of the revenues associated with any of these customers. . .

[Doc. 23-7, page 21 of 112].

Plaintiff also quotes from that same report a limited description of some of the services that LPS offers to its clients. The fact that Wells Fargo is an LPS client for some services does not mean they subscribe to every service, and it in no way creates a claim against LPS related to this particular Plaintiff's case. Moreover, the Plaintiff has attached a number of documents that appear to belong to Wells Fargo, none of which are related to

any claim or defense involved in this litigation. [Docs 23-13, 23-14, 23-15, 23-16, 23-17, 23-18, 23-19]. The simple, uncontradicted and central fact, though, is that LPS did not provide administrative services with respect to this Debtor's loan and there were no fees paid by Sirote to LPS related to the Plaintiff's bankruptcy. *See,* [Cloin Affidavit and Wright Declaration]. These documents do nothing to contradict this evidence.

**B. Testimony from Unrelated Cases Cannot Create an Issue of Fact**

Plaintiff's motion and affidavit make numerous references to the deposition testimony of William Newland, the Rule 30(b)(6) representative of Fidelity National Foreclosure & Bankruptcy Solutions, the predecessor to LPS Default, in an unrelated case.[5] *See,* [Doc. 23-1]. Plaintiff attempts two things with Mr. Newland's testimony: she attempts to create a fact issue and attempts to contradict Cloin's Affidavit submitted in this case. Neither can succeed.

Mr. Newland's testimony was taken in a state court proceeding involving an alleged wrongful foreclosure of a Wells Fargo loan, serviced by Option One Mortgage Corporation. The plaintiffs in that case had not filed bankruptcy under any chapter, and no claims were pursued regarding alleged fee splitting. Stated otherwise, his testimony related to a different case, involving a different loan, by a different lender, to a different borrower, serviced by a different servicer, and it occurred in a different legal proceeding (foreclosure as opposed to bankruptcy). The particular agreements alleged to have existed in the Alabama state court proceeding have no bearing – or relevance – to this action. Moreover, the cited portions of Mr. Newland's deposition do not support the

---

[5] Mr. Newland's deposition was taken in the matter styled *Larry David Wood, Jr. et al. v. Option One Mortgage Corporation, et al.*; Circuit Court of Dekalb County, Alabama; Civil Action No. 08-183.

<u>Plaintiff's contentions made through her attorney's affidavit. In sum, the contentions when paired with the citations are confusing, vague and ambiguous.</u>

The Plaintiff also submitted the testimony of Ms. Daphne Mosley in yet another lawsuit.[6] [Doc. 23-1]. Plaintiff's counsel contends in his Affidavit, [Doc. 23-1, ¶¶ 6-11], that he had voluntarily dismissed claims against LPS in that lawsuit based upon an affidavit submitted by LPS, which provided in part that "Plaintiff's loan was not managed by the servicer within the Fidelity proprietary technology system. Fidelity did not provide administrative services relating to the Plaintiff." See, [Doc. 23-3 at ¶ 3]. Plaintiffs cite Ms. Mosley's deposition testimony, purportedly as contradicting Mr. Walter's affidavit, because Ms. Mosley testified that LPS Default was "one of those outsource providers" used by her employer, Litton Loan Servicing, to contract with local attorneys. [Doc. 23-4]. <u>What Plaintiff's counsel failed to include in his affidavit was Ms. Mosley's subsequent testimony that her employer actually used several different firms for such services, including National Bankruptcy Services and Prommis Solutions.</u> See, [Doc. 23-4 at page 9&10]. Indeed, Ms. Mosley later testified that LPS was not involved with the loan at issue in that case related to bankruptcy matters (although services related to foreclosure were provided). [Doc. 23-4 at page 28, ln 6-21].

Moreover, despite Plaintiff's counsel's feigned "gotcha" in his Affidavit, suggesting that he discovered through the above testimony of Daphne Mosley that LPS was in fact involved in that case, <u>he did not thereafter seek to bring LPS back in as a party</u>. Indeed, Ms. Mosley's deposition was taken in October 2009, almost two years ago. Even more telling, however, is that the adversary proceeding in which Ms. Mosley

---

[6] Ms. Mosley's deposition was taken in the matter styled *Lorraine S. Hudson v. Litton Loan Servicing, LP, et al.*; United States Bankruptcy Court for the Middle District of Alabama; Adv. Pro. No. 08-08023.

{01577428.1/1321-0015}

9

Case 11-00040    Doc 29    Filed 06/27/11    Entered 06/27/11 11:19:03    Desc Main
                           Document      Page 9 of 15

testified was dismissed by the Court on summary judgment. See Order Dismissing Adversary Proceeding, Exhibit 1 hereto. Almost six (6) months elapsed between this alleged discovery and the case being dismissed by the Court granting summary judgment.

The Plaintiff also cites to In re Stewart, 391 B.R. 327 (Bank. E.D. La. 2008), an opinion issued by the United States Bankruptcy Court for the Eastern District of Louisiana. Meeker's purpose in citing Stewart is to refer the Court to the judge's *summary* of the testimony of a Wells Fargo representative, as if such paraphrasing constitutes admissible evidence in this case. *See generally*, U.S. v. Daniel, 202 F. 3d 270 (6th Cir. 1999) ("[A]n appellate opinion is not evidence."); Ballard v. Heineman, 548 F. 3d 1132, 1136 (8th Cir. 2008) ("In the absence of any preclusive effect, the findings and legal conclusions in the [other] court's opinion simply are not evidence that create genuine issues of material fact."). In any event, Meeker does not quote any portion of Stewart that supports her position that all loans serviced by Wells Fargo, including the Plaintiff's loan, are handled by LPS or LPS Default Solutions. In fact, based on the undersigned's reading of the opinion, no portion of the opinion supports that position. Finally, the opinion summarized Wells Fargo's use of Mortgage Servicing Platform ("MSP"), which is a technology completely separate and apart from the technology the Plaintiff claims issue with in the case at bar, LPS Desktop. The opinion is in no way relevant to the claims and defenses asserted in this case.

Finally, the Plaintiff also refers to materials filed in a proceeding in New Jersey. [Doc. 23 at 11]. She fails, however, to give any explanation of how these materials supposedly show that LPS or LPS Default Solutions referred the Meeker file to Sirote, provided Sirote with administrative services related to the Plaintiff's loan, or received

any money from Sirote. As such, they should not be considered as evidence because they have no relationship to any claim or defense in this matter.

### C. The Patent Application.

The Plaintiff also cites to an alleged unauthenticated, patent application relating to software used to process loans in default. The Plaintiff claims that this patent application "relate[s] to a software product used by one of [the] nation's largest LPS Network Firms [a law firm] that details a 'wrap-around' technology that allows the Vendorscape technology to pull its data directly from LPS Desktop." [Doc. 23 at ¶ 21]. The Plaintiff seems to imply that that a software system called Vendorscape was used to refer her matter to Sirote. She claims that "it is logical to infer that LPS is now working with Vendorscape to allow its interface with the LPS Desktop product" and that "it is perfectly logical that LPS would allow this wrap around technology to give the appearance that its 'network firms' are detached from direct referrals." [Doc. 23 at ¶¶ 22-23]. While the Plaintiff's inference makes an interesting story, the allegation that this patent application is "evidence" of some secret wrap allowing Vendorscape integration into LPS Desktop, is simply is not supported by credible or admissible evidence.

The patent application is not made on behalf of any LPS entity, including LPS Default. The application appears to have been made by a large Texas law firm and upon information and belief, is meant to cover a system that can take in and manage foreclosure and bankruptcy related data from any client middleware system, including Vendorscape, NewTrak (now known as LPS Desktop), or the firm's own proprietary system, Addison. The patent appears to cover an internal foreclosure and bankruptcy law firm case management and file processing system. What is clear is the document does

nothing to advance the Plaintiff's contentions that Sirote utilized LPS technology in this case, that Sirote received a referral of the Plaintiff's bankruptcy case from LPS, and that LPS and Sirote split the legal fee earned by Sirote for work completed on the Plaintiff's case.

### D. The Option One – Fidelity Agreement

The Plaintiff makes the inferential leap that somehow a 70-page agreement between Option One and Fidelity National Foreclosure and Bankruptcy Solutions shows that *Wells Fargo* refers "all matters to LPS Default for foreclosure and bankruptcy processing." [Doc. 23 at 9]. At the outset, portions of the document cited are unexecuted and do not appear to have ever been a part of any valid and enforceable agreement between the two parties. More importantly, this document is completely and wholly immaterial and irrelevant to the claims and defenses asserted in this litigation. Therefore, the agreement is inadmissible and has no bearing on the matters involved in this case.

### E. The Thorne Litigation.

The Plaintiff also points the Court to a similar case her attorney filed in the United States Bankruptcy Court for the Northern District of Mississippi, in which LPS filed an early motion for summary judgment. In that case, the Honorable David W. Houston, III allowed plaintiff's counsel to conduct discovery before ruling on the motion. However, Judge Houston allowed discovery only on the issue raised by the motion for summary judgment, which was the exact same issue raised by the defendants in the instant case Specifically, Judge Houston declared that "the discovery permitted by this Order shall be strictly limited to the sole issue of whether LPS or LPS Default provided services related to the [two] Debtors' bankruptcy case, and that discovery not directly related to the

Debtors' case will not be permitted."[7] Moreover, just as in this case, Plaintiff's counsel attacked the evidence submitted by LPS in <u>Thorne</u> on the very same grounds he raises now. As shown in footnote 6, Judge Houston was unpersuaded by the so-called "evidence" which was submitted by the Plaintiff.

### PLAINTIFF'S RULE 56(d) REQUEST SHOULD BE DENIED, AND LPS'SMOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

Plaintiff presents no relevant support for her contention that she will or can obtain any contradictory evidence that will create an issue of fact. Moreover, Plaintiff's contention as to what the requested discovery will show, even if correct, fails to demonstrate that Plaintiff could survive summary judgment in this case. <u>However, she do not even suggest that she will discover the one central piece of evidence necessary in this case – that LPS Default was paid any fee by Sirote & Permutt related to this Debtor's bankruptcy</u>. The issue in this case is not whether LPS in general has network agreements or any other agreement with law firms or provides mortgage loan services. The issue is whether LPS was paid a fee by Sirote & Permutt and Wells Fargo related to this Plaintiff, and, if so, whether LPS was engaged in improper "fee splitting" and the "unauthorized practice of law," as alleged by the Plaintiff. LPS denies these allegations in their entirety.

WHEREFORE, PREMISES CONSIDERED, and for the reasons stated in the Motion for Summary Judgment and Memorandum submitted in support thereof, LPS and

---

[7] The Plaintiff incorrectly asserts that discovery in the Mississippi case "is ongoing because of the defendant's (sic) refusal to cooperate with discovery in that action." [Doc. 23 at 4]. What is true is that <u>Judge Houston has *granted* the LPS defendants' motion for summary judgment in that case, finding that plaintiff's counsel had, as in the instant case, incorrectly asserted that the LPS defendants were involved in the referral of the debtors' file to the law firm in question</u>. *See*, Opinion and Order of the U.S. Bankruptcy Court for the Northern District of Mississippi, Exhibit 2 hereto. Plaintiff's counsel has filed a motion to reconsider Judge Houston's order granting summary judgment, citing what he calls his own "excusable neglect."

LPS Default request that the Court deny Plaintiff's Motion for Discovery under Rule 56(d), grant its Motion for Summary Judgment dismissing all claims against it and grant LPS and LPS Default such other relief as the Court deems just and proper.

Respectfully Submitted,
LENDER PROCESSING SERVICES, INC. and LPS DEFAULT SOLUTIONS

*s/ Eris Bryan Paul*
Robert M. Girardeau (GIR001)
Eris Bryan Paul (PAU014)
Attorneys for Defendants,

**OF COUNSEL:**
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484
Telephone: (205) 251-1193
Telecopier: (205) 251-1256

*s/Lawrence B. Voit*
Lawrence B. Voit
Attorney for Defendants, Lender Processing Services, Inc. and LPS Default Solutions, Inc.

**OF COUNSEL:**
SILVER, VOIT & THOMPSON, P.C.
4317-A Midmost Drive
Mobile, AL 36609-5589
Telephone: (251) 343-0800
Telecopier: (251) 343-0862

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 27th day of June, 2011 filed the attached via the Court's Electronic Filing System, which delivered notice of same to all counsel of record including the following:

S. Nick Wooten, Esq.
PO Box 3389
Auburn, AL 36831

Wesley H. Blacksher, Esq.
Blacksher & Haerrington, LLC
401 Church Street
Mobile, Al 36602

D.W. Grimsley, Jr. Esq.
PO Box 2207
Foley, AL 36536

Peter J. Mougey, Esq.
Levin, Panantonio, et al.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996

*s/ Eris Bryan Paul*