**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**DIVISION I**

**KATRINN MEEKER**                                      **PLAINTIFF**

**V.**                    **CASE NO.: 11-00040**
                         **CASE NO.: 10-04927**

**SIROTE & PERMUTT**                                    **DEFENDANT**

**BEFORE THE HONORABLE MARGARET MAHONEY**

**June 28, 2011**

**APPEARANCES**

**Attorneys for Plaintiff - Nicholas Wooten**
**- Peter Mougey**
**- Darrell Grimsley**

**Attorneys for Defendant - Jeffery Hartley**
**- Steve Stivender**

**Attorneys for LPS - Bryan Paul**
**- Larry Voit**
**- Alexandra Garrett**

-1-

P R O C E E D I N G S

JUDGE MAHONEY: ... and I guess as to the - - let s take -- well, let s first of all, before we do anything else, if you re here for either part of this let s note appearances for the record. And we ll start - - I guess, let s start(Inaudible) and then go to that side. All right.

MR. WOOTEN: For the Plaintiffs, myself, Nick Wooten, Mr. Peter Mougey, (Inaudible) and Bud Grimsley are here for the Plaintiffs.

UNIDENTIFIED: Would you spell Mr. Mougey.

JUDGE MAHONEY: Yes.

MR. MOUGEY: The last name is M-o-u-g-e-y.

UNIDENTIFIED: Thank you. Okay. Yes, sir.

MR. PAUL: Good morning, Your Honor.

JUDGE MAHONEY: Hi.

MR. PAUL: I m BryanPaul and Larry Voit are here on behalf of Lender Processing Services and LPS Default Solutions.

JUDGE MAHONEY: All right.

-2-

MR. HARTLEY: Judge, I m Jeffrey Hartley and Steve Stivender from my firm is here and we re here for the Sirote and Permutt Law Firm.

UNIDENTIFIED: Can you spell (Inaudible).

MR. HARTLEY: Stivender, S-t-i-v-e-n-d-e-r.

MS. GARRETT: (Inaudible), Your Honor, Alexandra Garrett here for LPS.

JUDGE MAHONEY: All right, anybody else - - doesn t look likeit - - whose appearance we need to note.

Okay. Everybody can be seated, except I want to go first to Number 22, the Application to Employ that was filed. I saw no objection to that unless - - well, I did see, and I have to confess, I didn t look this morning. I thought it needed the 2-16(b) statement and the fee agreement attached.

MR. WOOTEN: And, Your Honor, that was - - I was going to mention that earlier, I was going to ask Your Honor to pass that. We had a filing in Thorn that we had to make late last night.

-3-

1　　　　　JUDGE MAHONEY:  Okay.

2　　　　　MR. WOOTEN:  I have everything almost

3　　ready to file and think I  ll have it filed

4　　later this week and we can come back in the

5　　next hearing.

6　　　　　JUDGE MAHONEY:  All right.

7　　　　　MR. WOOTEN:  I think we  ll have their

8　　objections covered.

9　　　　　JUDGE MAHONEY:  Then I would propose to

10　　put this on 7-12.

11　　　　　MR. HARTLEY:  I  d like to - - just for

12　　the record, Your Honor, note my - -

13　　　　　JUDGE MAHONEY:  There are two

14　　objections.  Yeah, you did.  And I put my

15　　own notes down and then I saw the

16　　objections after that that paralleled mine,

17　　which is why I should have written down

18　　there were objections, but they were the

19　　same as mine, so I didn  t write it down,

20　　but I remember that, too, so thank you.

21　　　　　Okay.  That is reset to 7-12 at 8:30.

22　　　　　All right.  Now we  llgo to Number 24.

23　　We have several matters and actually one

24　　isn  t on the docket. It was that motion to

25　　- - strike that was filed as well.  Here, I

　　guess I  ve got theseall together.  That is

-4-

basically added to the list.

　　　And I guess I would ask counsel, it strikes - - I didn  t mean to make that, but it strikes me that we probably need to deal with the Motion to Strike first.  Although maybe - - I don  t know, in essence - - in a way for me we can almost deal with all of it together if that  s what everybody wants to do.

　　　MR. HARTLEY:  I think that  s fine.

　　　JUDGE MAHONEY:  I can deal with it that way.  And I guess I  d rather not rule on each individual thing.  That way without - - I think while you  re all here I  d like to hear all of it and then you  ll get my opinion when you get it.

　　　Okay.  The first Motion for Summary Judgment filed, so I would probably go in order, would go - - would be go to Mr. Paul or - - right, Mr. Paul.  And then go to Mr. Hartley, and then let the other side respond.  All right.

　　　As I know you  ve all heard me say before, I have read everything.  So I guess what I really would like you to do is more than just  - I don  t want you to go

-5-

through your papers, I want you to kind of
respond to what they - - they ve done. And
tell me something that - - that s - - hit
the highlights, but also more than anything
respond to what they filed.

MR. PAUL: Be glad to.

JUDGE MAHONEY: All right.

MR. PAUL: Your Honor, as you are aware
this is a - - a class action case where
they have alleged that my client was in the
business of referring business to the
Sirote and Permutt Law Firm and then
splitting the legal fee that they earned
for that.

JUDGE MAHONEY: Right.

MR. PAUL: That firm, that s the
allegation.

JUDGE MAHONEY: Right.

MR. PAUL: Of course, (Inaudible)
that s accurate.

JUDGE MAHONEY: Oh, I know, I can tell
that.

MR. PAUL: Your Honor, in this
particular case my client did not touch the
bankruptcy related to Ms. Meeker, nor did
they receive any fee, related to her

-6-

bankruptcy.

JUDGE MAHONEY: How - - I think it s the Plaintiff s position that that can t b because all of these things had to have been handled in the same way. Is that - - so what you re telling me is this an out-lier? Is this - - is it not true that everything is always handled in the same way? How could that be?

MR. PAUL: That is correct. The affidavit that was submitted by Mr. - - Mr. Wooten is full of, as far as deposition testimony, <u>(Inaudible)</u> opinions from other cases - -

JUDGE MAHONEY: And I know that that goes to that Motion to Strike, yeah.

MR. PAUL: And don t necessarily touch upon LPS Desktop, the particular software that would be in play here had the referral gone from LPS to Sirote.

JUDGE MAHONEY: So there s just - - I guess what I - - and maybe the best way to ask it, too, is just point blank. You - - LPS had nothing to do with Ms. Meeker s file - - case. You did not touch this case?

-7-

1     MR. PAUL:  With respect to her

2     bankruptcy, no, ma am LPS - -

3         JUDGE MAHONEY:  Now, what is that - -

4     so you said with respect to her bankruptcy,

5     so - -

6         MR. PAUL:  Wells Fargo is, of course,

7     as Mr. Wooten s filings have shown, Wells

8     Fargo is a client of Lender Processing

9     Service.

10        JUDGE MAHONEY:  All right.

11        MR. PAUL:  One of Lender Processing

12    Services subsidiaries.

13        JUDGE MAHONEY:  Right.

14        MR. PAUL:  They use a software program

15    called MPS (sic) or mortgage servicing

16    platform.

17        JUDGE MAHONEY:  Uh-huh (affirmative).

18        MR. PAUL:  It is a life-of-the-loan

19    technology that tracks payments and allows

20    a servicer to track them from the time of

21    the origination of loan through the time

22    it s paid off, or if it goes into default.

23    It has some bankruptcy-related sub work

24    stations that can be opened and keep track

25    of payments that way.

1      MSP is not utilized by the law firm in

2      this particular case.  It is paid for and

3      utilized by the servicer.  What they have a

4      problem is LPS desktop, which is a

5      completely different software program that

6      is opened up or comes into effect once a

7      loan goes into default.

8          It is a - - you can think of it as an

9      electronic library or warehouse.  It stores

10     data, documents.  It has an intercom

11     function that allows the law firm and the

12     client, or the servicer to talk to one

13     another, send messages, to send documents

14     back and forth.  And it also has a

15     calendering - - calendar function as well,

16     that can keep track of how long it takes to

17     respond to certain items.  You know, what

18     stage the foreclosure and bankruptcy is in

19     and that sort of thing.

20         JUDGE MAHONEY:  And you re saying in

21     the Meeker case that was or was not used?

22         MR. PAUL:  That was not used.

23         JUDGE MAHONEY:  Not used.  And the - -

24     well, that s a queston for Mr. Hartley but

25     does Sirote ever use it?

1      MR. PAUL:  Does Sirote ever use MSP or

2      the desktop?

3           JUDGE MAHONEY:  The desktop.

4           MR. PAUL:  If Sirote would have been -

5      - if Sirote would have been - - if we would

6      have been tied into this case - -

7           JUDGE MAHONEY:  Uh-huh (affirmative).

8           MR. PAUL:  - - Sirote would have been

9      using the desktop.

10          JUDGE MAHONEY:  Okay.  Okay.  But - -

11          MR. PAUL:  But - - but they received

12     the referral in this case from Ms. Meeker s

13     bankruptcy to Vendorscape (phonetic), which

14     is a technology that s owned by our

15     competitor First American.

16          JUDGE MAHONEY:  Okay.  So - - okay.  So

17     basically you - - you were not - - LPS and

18     desktop were just not - - I guess they    -

19     the servicer may have used the MSP is what

20     you  re saying.

21          MR. PAUL:  Could have.

22          JUDGE MAHONEY:  But - - but Sirote

23     didn  t use the desktp - -

24          MR. PAUL:  Correct.

25          JUDGE MAHONEY:  - - he used

-10-

1    Vendorscape.

2        MR. PAUL:  But keep in mind the

3    allegation here, Your Honor.  The

4    allegation is is that the LPS referred the

5    Meeker bankruptcy to Sirote - -

6        JUDGE MAHONEY:  Right.

7        MR. PAUL:  - - in exchange for a kick

8    back for a part of (Inaudible).

9        JUDGE MAHONEY:  Right, right.  No.

10   Yeah.  Okay.  And that's why I'm trying to

11   - - so - - so that was going to be my next

12   question.  So even if LPS was used by this

13   mortgage servicer that's not an issue here

14   because it's the referral or whatever that

15   was the issue?

16       MR. PAUL:  Correct.  And that fee is

17   the servicing platform that tracks

18   payments.  It does not shoot documents back

19   and forth between law firms and servicers.

20   And, you know, frankly at some point the

21   law firm may be able to get printouts from

22   MSP, you know, if they had some question

23   about payment histories and that - - that

24   sort of thing - -

25       JUDGE MAHONEY:  Uh-huh (affirmative).

1        MR. PAUL:  - - but it is not - - it is

2   not the software program that would push

3   documents from the servicer to the law firm

4   that would be opened in case of a default

5   in - - it is the software that - - that

6   would run the foreclosure of a bankruptcy

7   system.

8        JUDGE MAHONEY:  Okay.

9        MR. PAUL:  That would allow the

10  servicer to manage it.

11       JUDGE MAHONEY:  And so - - I realize I

12  may be asking questions that are a little

13  bit beyond, but I m just trying to make

14  absolutely certain in my mind what your

15  position is about - - about any use of your

16  software.

17       So actually somebody could - - a

18  servicer could use your software at - - at

19  the servicer level, but then there could

20  actually be this other vendor, Vendorscape,

21  or whatever that - - that interfaces for

22  bankruptcy.  And the same could be true for

23  you folks.  See, I didn  t realize you could

24  sort of mix and match like that

25  (Inaudible).

-12-

1      MR. PAUL:  It s my understanding that

2      Vendorscape can - - can interface with MSP.

3           JUDGE MAHONEY:  Okay.  Interesting.

4           MR. PAUL:  But, again, MSP in this

5      particular case, First American, would have

6      - - or at least that s my understanding,

7      the First American - - if Vendorscape is

8      the technology that was - -

9           JUDGE MAHONEY:  Uh-huh (affirmative).

10          MR. PAUL:  - - that Sirote received the

11     referral on, it s a First American

12     technology, it s not ours.

13          JUDGE MAHONEY:  Okay.

14          MR. PAUL:  And frankly with respect to

15     the affidavit, I know there was some - -

16     there was an allegation of this wrap-around

17     this theory and this patent application

18     that was submitted to the Court.  The

19     patent application is not submitted on

20     behalf of LPS or any LPS subsidiary.  It s

21     my understanding that that patent

22     application, and frankly I m not a patent

23     lawyer, I read it as best I could, but it

24     appears to be a patent application on

25     behalf of a large Texas law firm and it s

-13-

1    to patent their own in-house proprietary

2    document management system, which can

3    interface with LPS desktop, it can also

4    interface with Vendorscape, and I believe

5    it also interfaces with a in-house

6    proprietary system that they have already

7    that  s called Allison   I don  t know much

8    - -

9        JUDGE MAHONEY:  Barrett Burke Law Firm,

10   or one of those?

11       MR. PAUL:  Is it Guard and Wynne?

12       UNIDENTIFIED:  Guard - - it  s Barrett

13   and Burke I think.

14       MR. PAUL:  Okay.  But frankly - -

15       JUDGE MAHONEY:  Okay.  And Barrett and

16   Burke isn  t involvedin this case unless I

17   missed it anyway, right?

18       MR. PAUL:  As far as I know they  re

19   not, no, ma  am.

20       JUDGE MAHONEY:  Okay.  Okay.

21       MR. PAUL:  They  re certainly not a

22   party.

23       JUDGE MAHONEY:  All right.  Anything

24   else you want to add?  You  ll have a chance

25   to respond after Mr. Wooten talks here in a

-14-

1  second.

2      MR. PAUL:  Obviously coming down here

3  yesterday I was kind of thinking in the car

4  on the car ride down, what I was going to

5  say to the Court.  It s obvious to me that

6  you ve read all of on pleadings.

7      JUDGE MAHONEY:  I have read the

8  pleadings, yes.  We a read them a couple

9  of times.

10     MR. PAUL:  Without wasting the Court s

11  time, the majority of the evidence that was

12  submitted, along with the affidavit is

13  irrelevant and immaterial to the referral

14  of Ms. Meeker s bankruptcy case to Sirote.

15     JUDGE MAHONEY:  Okay.  Mr. Hartley.

16  Let me just, for the record clarify, too,

17  because I know that  swhat your pleadings

18  say, but it s Sirotes position, and I saw

19  Mr. Wright s affidavit, they - - in this

20  case there was no use of the    - the - - f

21  the MSP software for purposes in this

22  bankruptcy, the referral was not from LPS?

23     MR. HARTLEY:  Correct, Judge.  And in

24  fact the referral, as I understand it from

25  Mr. Wright, talking to him yesterday, I

-15-

1    guess I can say this, it s a direct

2    referral from Wells Fargo.  So it - -

3         JUDGE MAHONEY:  It wasn t even through

4    Vendorscape?

5         MR. HARTLEY:  Vendorscape is a

6    software, and so - -

7         JUDGE MAHONEY:  Right.  Yeah, but I

8    mean - - okay.

9         MR. HARTLEY:  It goes to a question you

10   asked just a moment ago.  This is not

11   uniform.  And what I mean by that is every

12   time Wells Fargo is involved that doesn t

13   mean that LPS is involved.  You kind of

14   asked that question a moment ago.

15        JUDGE MAHONEY:  Yes.

16        MR. HARTLEY:  And in fact in Mr.

17   Wooten s, either in his response, or in his

18   affidavit, I can t remember, he even says

19   that it s LPS that des 20 percent of the

20   work or something like that.  So it s

21   obviously not a uniform, any more than

22   Chapter 13 uniform.  This is a complicated

23   industry that I m stil learning about,

24   frankly, and Your Honor obviously is still

25   learning about.

                                        -16-

1              JUDGE MAHONEY:  Right.

2              MR. HARTLEY:  And so - - but in dealing

3         - - this case is - - this is not a class

4         action.  This - - we re dealing with the

5         Meeker file.  And Mr. Wright s affidavit

6         says very clearly that it wasn t - - it

7         doesn t involve LPS in any way, shape or

8         form, and it does not.  And there s no

9         evidence to - - once you do that under Rule

10        56, 70-56(c), burdens shifts and they ve

11        got an opportunity.  There s a lot of - -

12        there s a lot of information that Mr.

13        Wooten put in his pleading and his

14        affidavit and the attachments.  And we ve

15        gone through in our supplemental response,

16        if you will that Your Honor I know has read

17        and we tried to address those categories -

18        -

19             JUDGE MAHONEY:  Yes.

20             MR. HARTLEY:  - - one by one for Your

21        Honor to make it crystal clear.  And I

22        think - - and I know Your Honor has

23        obviously read them very carefully.

24             JUDGE MAHONEY:  Yes.

25             MR. HARTLEY:  If you look at that

                                                  -17-

1    document for purposes of your question,
2    they haven t met their burden under 70-56
3    for purposes of the Meekers.  And that s
4    what this case is about.  It doesn t go
5    beyond the Meekers.  This isn t an
6    opportunity to fill holes in their theory.
7    That s the - - Your Honor is not allowed to
8    do that.  The rules don t allow for that.
9    The rule don t allow for fictitious
10   plaintiffs, if you will.  It s just not set
11   up that way.  And that s - - I think thats
12   kind of where this is headed.

13       So for purposes of what we are here
14   about, under - - and one last point, a
15   summary judgment motion is an appropriate
16   response.  That seemed to be the first
17   issue and important issue raised by Mr.
18   Wooten.  It s an appropriate response.

19       We gave Your Honor several cites that
20   allowed for it.  And in fact there s one
21   cite in there from the Southern District
22   that said we expect a response like this in
23   a circumstance like this.

24       And so Mr. Wright s affidavit is
25   uncontroverted.  And at this point that s

-18-

1    where we are and we think that  s where You
2    Honor should stay.  And we think the
3    summary judgment motion should be granted.
4        JUDGE MAHONEY:  All right.  Mr.
5    Wooten.
6        MR. WOOTEN:  Your Honor, let me - -
7        JUDGE MAHONEY:  Well, you know where
8    I  m going to go withyou.  Let  me   - I  m
9    going to start right here.  If they  re
10    right you just picked the wrong plaintiff,
11    right?
12        MR. WOOTEN:  Well, it  s interesting,
13    Your Honor.  For them to be right all you
14    have to do is ignore all their sworn
15    testimony that says that every loan that
16    they managed - -
17        JUDGE MAHONEY:  The only testimony I
18    really have here right now, other than what
19    you  ve given me thatisn  t directly related
20    to this case is Mr. Wright  s and Mr. - - I
21    forget, the person from LPS that gave - -
22        MR. WOOTEN:  Mr. Newman
23        JUDGE MAHONEY:  Not - - not this case.
24    Not this case.
25        MR. WOOTEN:  Oh.  We submit, as an

1  attachment to our Complaint, the

2  30B(6)deposition of Phil Newman, that they

3  fought incredibly hard to have re-sealed

4  by Judge Colen in Dekalb County a few weeks

5  ago.  And they fought to not have attached

6  to these complaints.  Why?  Because that

7  testimony says that every servicer for

8  which they have an agreement with, which

9  they admit they have with Wells Fargo, and

10 we have clearly submitted evidence that

11 they do says that every loan that is in

12 default as defined by the vendor, which for

13 most of these servicers is 91 days, is

14 automatically transferred to LPS Default

15 Services for management.

16     JUDGE MAHONEY:  So your position would

17 be that you ve at least raised a genuine

18 issue of material fact that prevents

19 summary judgment.  That s all you want to

20 get to today?

21     MR. WOOTEN:  Today, that s correct.  I

22 think there s ample evidence for you to

23 deny the motions outright, but here s what

24 my concern is, is that it s obvious, I

25 think, from the tenor of these document and

-20-

1     then documents that have been filed in

2     other cases that the effort here is to push

3     down any inquiry into the scope and

4     magnitude of his conduct and how prevalent

5     it is.  And    -

6         JUDGE MAHONEY:  Well, let me just ask

7     this, if - - I think someplace in the

8     materials, I think Mr. Hartley is right,

9     there was something about LPS only yielding

10    with the percentage of loans from Wells

11    Fargo or others.  In other words they  re

12    not the only vendor of this stuff.

13        MR. WOOTEN:  No, but they have 80 plus

14    percent of the market, Your Honor.

15        JUDGE MAHONEY:  Okay.  But so - - so

16    isn  t it possible that they  re right that

17    you got one of the 20 percent?

18        MR. WOOTEN:  Anything is possible.

19        JUDGE MAHONEY:  So - -

20        MR. WOOTEN:  Is it unlikely?  Does it

21    contradict the documents?  Yes.

22        JUDGE MAHONEY:  But if that  s - - if

23    that  s what - - I realize you have

24    testimony that says every loan, but even

25    your papers, and I don  t remember where it

-21-

```
 1        was either, say that it isn  t every loan,
 2        it  s only most, quitea bit of most, like
 3        let  s say 80 percent. I guess my concern
 4        is if they really have - - and I  ve got a
 5        lawyer from the firm, who is a very good
 6        lawyer that I don  t think is going to tell
 7        me a lie, and somebody from LPS that says
 8        this is one of the few, should we really
 9        let this case go on and not let you go find
10        another one, which I m sure you will, you
11        know, and    - and deal with this again?
12             MR. WOOTEN:  Well, my concern about
13        that, Your Honor, is this, they have these
14        agreements, and Wells Fargo, their
15        agreement is that they are a 100 percent
16        outsourcer.  In other words Wells Fargo
17        maintains nothing but supervisory roles
18        over what LPS is doing for them.
19             JUDGE MAHONEY:  Right.
20             MR. WOOTEN:  They have 24 percent of
21        the entire income of LPS from this sector
22        comes from Wells Fargo.  The contracts say,
23        the standard form, the DSA, says every loan
24        goes over.  Bill Newlin  s testimony is that
25        push is made electronically.  There is no
```

-22-

1    human interference at all.

2        Their own documents that we pulled from

3    their file in New Jersey, the document that

4    was 444. Now, they complained about the

5    way we structured that. Fact is they made

6    a voluminous filing in response to a show

7    cause order in New Jersey. That voluminous

8    filing was from the Director of Default

9    Services and their senior officer who

10    replaced Kimberly Miller in Fort Mill,

11    South Carolina.

12        And those attachments, there s actually

13    a screen shot in the training material that

14    they chose that shows a referral from

15    November 29th of 2010, of a matter, through

16    desktop to Sirote and it s still talking

17    about the structure they currently employ,

18    which is MSP, down to this Vendorscape

19    function.

20        JUDGE MAHONEY: But my concern is I

21    have to deal with the evidence I have.

22    Let s go back to another question I have.

23    We ve got two affidavit that are properly

24    done, I think, one from LPS, and one from

25    Mr. Wright. What about the issue that I

-23-

know you've got facts but they're all from other cases where they weren't involved and able to ask questions and do that.

Let's go to - - at this point the evidence that I have that I considered in the summary judgment, unless - - unless I'm missing something some of the things you've got in your affidavit where you talk about what they do in a lot of cases may not be something I can - - I can deal with, or use, unless I'm missing something.

They didn't have any right to ask any questions of those witnesses, etcetera.

MR. WOOTEN: Well, and, Your Honor, I think the point I was trying to make by the information that we produced in the form of this testimony and the matters that we've put into the record - -

JUDGE MAHONEY: All right.

MR. WOOTEN: - - is this Defendant is always going to take this position because they cannot stand scrutiny, because at the end of the day it's very simple documentary evidence. If they produce their agreements, as between the servicers and

-24-

the attorneys, and they produce their
financial transactions back and forth the
Court is going to see a massive amount of
money flowing back and forth between these
parties related to these referrals.

And because it is so simple and so
straight forward their goal is to never let
that inquiry take place. So they moved for
pre-answer summary judgment and their goal
is to clamp down this inquiry and limit it.

JUDGE MAHONEY: And I m not prepared to
do that. And I hope everybody knows if
you ve got a case I m going to let you = =
let you go with it. My only concern is
whether in this instance we have the right
case. That s really what I want to get to
today. I don t - - I m not - - I m not
pre-judging or - - and I don t want to, any
of those other issues about which you may
have very good arguments. I - - but as of
today my only concern is do - - is Ms.
Meeker - - it s Ms, right - - Ms. Meeker
the proper plaintiff? Because the last
thing I want to do is - - is have me, or
you, get to a point where - - where - - and

-25-

```
 1      maybe from your perspective you  d probably

 2      just as soon be able to do the discovery

 3      anyway, even if you later get - - get

 4      thrown out, I  m sure,because I know you  re

 5      going to do another one of these, like I

 6      said.  So getting to the discovery is - -

 7      is not all bad for you.

 8          But from my perspective, as a judge,

 9      I  ve go to say is this - - is this a case

10      that I ought to let go on.

11          MR. WOOTEN:  And my response to that

12      was - - would be that first of all summary

13      judgment is clearly premature, because

14      there  s clearly a fact question based on

15      their affidavits, which contradict their

16      contracts.

17          JUDGE MAHONEY:  Okay.  And - -

18          MR. WOOTEN:  So they have submitted a

19      contradictory position.  And then today in

20      their arguments they told you literally two

21      different things.  One, that Vendorscape

22      handled this referral and - -

23          JUDGE MAHONEY:  Mr. Paul said they

24      might have.

25          MR. WOOTEN:  And two - -
```

-26-

1      JUDGE MAHONEY:  And now Mr. Wright is
2  apparently saying it was a direct one.  And
3  I don t think that  what the affidavit
4  said.
5      MR. WOOTEN:  Now - - now what we - -
6  what I think.
7      MR. HARTLEY:  But Vendorscape is not a
8  part of this.
9      JUDGE MAHONEY:  No, they aren t.  I
10  understand.
11      MR. HARTLEY:  The affidavit doesn  t
12  speak to it on _(Inaudible)_.
13      JUDGE MAHONEY:  I hear you.
14              _(Inaudible)_
15      JUDGE MAHONEY:  And I  ll come back to
16  you guys, I  ll come back anyway.
17      MR. WOOTEN:  Now, what I think
18  discovery will reveal, Your Honor, is that
19  the purpose that Vendorscape became
20  employed for timeline management was to
21  take pressure off the attorneys on the APR
22  rating.
23      JUDGE MAHONEY:  But - -
24      MR. WOOTEN:  And that  s - - that  s part
25  of - -

-27-

JUDGE MAHONEY: And you're - where you're going is beyond me. And I think my real issue is really simple today, I think. And I think you've come to it. I'm not so sure that your - - that the affidavit you filed is something I ought be considering. But to the extent, and I think attached to your Complaint it was. Does this not really boil down to whether summary judgment isn't appropiate because of how their contract reads?

MR. WOOTEN: That's correct.

JUDGE MAHONEY: Isn't that really where we're at?

MR. WOOTEN: That's correct. At this moment but - -

JUDGE MAHONEY: That's what I'm going to ask them.

MR. WOOTEN: And that's what they've asked. And all we would say is that that is true. I really, at the core view their motions as an attack on the adequacy of our proposed class representative. And Your Honor is very familiar with class action jurisprudence that says that if there's a

```
 1    problem with a rep, the rep can be
 2    substituted.  The point of the class action
 3    mechanism is to address the behavior.  So
 4    to the extent that the evidence that they
 5    submit contradicts the known contents of
 6    their standard documents then there is
 7    sufficient basis to say that there  s a fact
 8    question and go forward.
 9         JUDGE MAHONEY:  Okay.  So you would say
10    that the    - even ifI found Ms. Meeker was
11    an inappropriate plaintiff, you should be
12    given leave to amend to add a new class
13    rep?
14         MR. WOOTEN:  Normally this type of
15    attack would take place at the class
16    certification point.
17         JUDGE MAHONEY:  I know.  But I did - -
18    have had some where it  s come up sooner and
19    dealt with it in appropriate circumstances.
20         MR. WOOTEN:  And, Your Honor, if I
21    understand what they ve said to you
22    earlier, then in theory we could go take
23    any other Sirote-managed Wells Fargo case,
24    which I think is any of them based on what
25    I  ve seen in the thre districts in this
```

```
 1        state, and file that as an additional class
 2        rep and in theory my problem will be cured
 3        unless we are just the most unlucky
 4        plaintiffs  lawyers in the world and that
 5        we always miss the ones that are
 6        (Inaudible).
 7             JUDGE MAHONEY:  Yes.  Okay.
 8             MR. WOOTEN:  So I think that, to that
 9        extent we could determine that, but I think
10        Your Honor will when the discovery is done
11        that we  re right andthere  s a word game
12        going on here about this to some extent.
13             JUDGE MAHONEY:  Okay.  Let me go to Mr.
14        Paul.  Okay, Mr. Paul and Mr. Hartley, what
15        I really want you to focus on is am I right
16        that we  re down to, and I think that  s kind
17        of what you guys were telling me that    -
18        that really as to the summary judgment
19        issue if he  s right that the agreement says
20        every loan goes to LPS and their systems,
21        is that enough to counter your affidavits
22        that say this one didn  t, at least at this
23        point.  And the other part is if she  s an
24        improper class rep, should they be allowed
25        to amend?
```

-30-

1          MR. PAUL: Well, let me address the
2      contract issue first, and the key to it is
3      if he s correct.
4          Wells Fargo is a client of LPS or an
5      LPS subsidiary. As far as default-related
6      services or technology that they use they
7      are just now coming on board. And this is
8      what discovery will show. I don t mind
9      telling the Court, and don t mind telling
10     it.
11         Wells Fargo, what he ll find, was
12     operating under a temporary default
13     services agreement. And it s not even a
14     DSA like he s attached that belongs to
15     Option One, which is a different servicer.
16     We ve got various objections to that DSA
17     having any relevance here. Because, as a
18     matter of fact, there s portions that he
19     has included that are not part of the
20     Option One DSA. But anyway that s - -
21         JUDGE MAHONEY: And tell me, I should
22     know, DSA is servicing agreement, direct
23     service?
24         MR. PAUL: Default - - default
25     servicing agreement.

-31-

1        JUDGE MAHONEY:  Default.  Default

2    servicing.  Okay, all right, got it.

3        MR. PAUL:  And, you know, what

4    discovery is going to show is that Wells

5    Fargo is not using LPS desktop with

6    relation to bankruptcy cases.  It doesn t

7    even go live on those until, I think, 2012,

8    next year.

9        JUDGE MAHONEY:  Okay.

10        MR. PAUL:  So what he s saying is the

11    DSA exemplar he s produced for Option One

12    is exactly like the one that s in play with

13    Wells Fargo and that s not going to be the

14    case.

15        JUDGE MAHONEY:  Okay.  All right.  So -

16    -

17        MR. PAUL:  They re operating under a

18    temporary agreement at this point.

19        JUDGE MAHONEY:  So not - - I m always

20    going to, obviously very selfishly what I

21    have to do here.  So you are saying because

22    it s Option One agreement that s attached

23    and - -

24        MR. PAUL:  It s a different service.

25        JUDGE MAHONEY:  - - it isn t what I

-32-

have in - - have in evidence.  You re
saying it s Option One and we have two
affidavits that say Sirote didn t use it
that they don t have- - they haven t
raised a question, a genuine issue of
material fact because Option One s contract
isn t - - isn t Wells Fargos and - -

MR. PAUL:  That s correct.  I mean the
DSA that they ve submitted as an exemplar
deals with a different servicer.

JUDGE MAHONEY:  Yes.

MR. PAUL:  And it s from the period of
time of 2006.

JUDGE MAHONEY:  Okay.  So the time and
- -

MR. PAUL:  And here we are in 2011
dealing with, I believe, a motion for
relief from stay, or I guess a bankruptcy
that was filed in October of 2010?

JUDGE MAHONEY:  Right.  Okay.  And what
about - -

MR. PAUL:  Again, and the other thing I
wanted to bring back is the evidence he
submitted in support of his Rule 56(d)
motion is not admissible.

-33-

```
 1          JUDGE MAHONEY:  And that  s why I was
 2     saying let  s - - quite frankly - -
 3          MR. PAUL:  It  s not evidence.
 4          JUDGE MAHONEY:  - - that  s why I want
 5     to explore.  Let  s say I don  t allow any of
 6     that.  What - - what is there.  And I
 7     think Mr. Wooten is saying, well, you can
 8     rely on the fact that that  s what their
 9     contract says, and we  re - - and that  s how
10     we get there.  Okay.  All right.
11          And tell me about - - what about Mr.
12     Wooten  s argument?  Well, if they picked
13     wrong, a wrong plaintiff, Ms. Meeker is
14     wrong as an appropriate plaintiff, why
15     shouldn  t I allow them to amend and find a
16     new plaintiff.
17          MR. PAUL:  Well, in that case, because
18     if they  ve got a complaint with Ms.
19     Meeker  s bankruptcy, LPS doesn  t have
20     anything to do with Ms. Meeker.
21          JUDGE MAHONEY:  Okay.  In other words
22     if Ms. Meeker is out, then the lawsuit
23     should go away and they need to start over.
24          MR. PAUL:  There  s no standing.
25          JUDGE MAHONEY:  All right.  Okay.  I
```

1   think I see your position.  All right.
2   Anything else?  Otherwise I m going to go
3   ahead to Mr. Hartley.

4       MR. HARTLEY:   Judge, I don t know that
5   I have a lot to offer.  But for purposes of
6   my client Bryan - - Mr. Paul said what I
7   was going to say.  He used this word
8   evidence, it s not evidence.  Evidence is
9   authenticated or evidence you have personal
10  knowledge of.  We filed an appropriate
11  Motion to Strike.

12      None of these documents have been
13  authenticated.  He certainly doesn t have
14  personal knowledge of these contracts, he s
15  not a party to them.  He didn t draft them,
16  he didn t write them. I don t - - I don t
17  think he s going to stand up and say that.

18      The contract we re talking about
19  involves the predecessor of LPS and Option
20  One.  It doesn t involve Wells Fargo, and
21  it certainly doesn t involve Sirote and
22  Permutt.

23      And so for purposes of our summary
24  judgment your questions are exactly right.
25  And my position, I believe, under the rules

```
 1        is right.  The summary judgment motion is
 2        appropriately filed at this point.  He has
 3        an opportunity and an obligation as the
 4        non-moving party to do three things.  Under
 5        750 - - 705(6)(c), he hasn't done those.
 6        They're inclusive andthey're conjunctive.
 7        He has to do all three.  And this isn't a
 8        fishing expedition.   And so - - that's not
 9        how this works.  They fundamentally have
10        filed a complaint, the Plaintiffs lawyers
11        have filed a complaint and the facts are
12        wrong.  You have to grant summary judgment.
13         There's no evidence- - we've cited to you
14        case law that is - - Your Honor, an 11th
15        Circuit case law that says depositions and
16        things in other cases when the same parties
17        aren't involved, youcan't consider those.
18        Those are - - they rejust - - they're not
19        relevant at this point.
20             JUDGE MAHONEY:  What about allowing him
21        to amend?
22             MR. HARTLEY:  Amend to just go until
23        they find a particular plaintiff?  Judge,
24        that - - he had an opportunity to get this
25        right.  They had an opportunity to get this
```

Case 11-00040   Doc 52   Filed 08/18/11   Entered 08/18/11 09:39:46   Desc Main
Document    Page 36 of 44

```
 1        right.  And I just don t believe at this
 2        juncture that  that  san appropriate - - as
 3        Mr. Paul, you asked him the same question,
 4        I would give you the same response.
 5             JUDGE MAHONEY:  Okay.
 6             MR. HARTLEY:  It s jst not - - it s
 7        just not an appropriate remedy, if you
 8        will, for a response to the summary
 9        judgment motion.
10             JUDGE MAHONEY:  Okay.  All right.
11             MR. MOUGEY:  Your Honor, would you mind
12        if I addressed the affidavit?
13             JUDGE MAHONEY:  I lllet you do that
14        and then - - we re nb going to go back and
15        forth but I ll - -
16             MR. HARTLEY:  Your Honor usually
17        doesn t allow multipe lawyers to represent
18        parties in a case.
19             MR. MOUGEY:  It  s jub the issue of the
20        affidavit.
21             JUDGE MAHONEY:  I m ging to let him do
22        it.
23             MR. MOUGEY:  Thank you, Your Honor.  I
24        appreciate it.
25             JUDGE MAHONEY:  Okay.  And you - - just
```

```
1          for purposes you are Mr. - -
2               MR. MOUGEY:  Peter Mougey.
3               JUDGE MAHONEY:  Mougey.  That s right.
4               MR. MOUGEY:  Yes, ma am, thank you.  I
5          appreciate it.  I know it s two lawyers
6          arguing.  I just want to address the point
7          about the affidavit.
8               The affidavit doesn tgo out in whole,
9          it doesn t go out intotal, it didn t go
10         out in pieces.  Okay?
11              JUDGE MAHONEY:  I know they objected
12         and I would have to go through and deal
13         with each part.  I maware of that.
14              MR. MOUGEY:  Yes, ma am.  I don t think
15         you have to, though, and let me tell you
16         why.  There was just a key statement made.
17         And this key statement was it s not
18         relevant at  this point.
19              It s not relevant atthis point because
20         what we have are some affidavits from the
21         Defendants that take a position that we
22         haven t had the oppotrunity to cross, we
23         haven t had the oppotrunity to do any
24         discovery.  They re ballenging Mr.
25         Wooten s affidavit. Mr. Wooten  s affidavti
```

                                                      -38-

1    attacked self-authenticating  documents.

2    It attaches admissions by party opponent,

3    they attack the affidavit as hearsay.  It s

4    not hearsay.  The affidavits and the pieces

5    of LPS contracts, other documents, those

6    fall outside of the hearsay rule.  They  re

7    not hearsay.  They  readmission by party

8    opponents.

9        Those documents - - and all we wanted

10   Your Honor to see was that it  s not clean.

11   There is an issue of material fact, but

12   most importantly what the documents that

13   Mr. Wooten attaches create an issue.  At

14   the end of the day, though, the statement

15   made by counsel is dead on.  Not relevant

16   at this point.

17       They want to talk - - we  ve - - I mean

18   we  re - - they had the opportunity from the

19   - - you heard the statement made that the

20   contract attached, the DSA exemplar.  We  re

21   using a different contract.  Let us see it.

22   Let us look at the contract.   That  s

23   what  s wrong with this is the way this is

24   postured, we haven  teven seen the

25   agreement.

JUDGE MAHONEY:  But they re saying that
you can  t, that you can  t get to discovery
so you can  t - -
                    MR. MOUGEY:  Exactly.
                    JUDGE MAHONEY:  I hear (Inaudible).  I
understand what you  e saying.
                    MR. MOUGEY:  We  re talking about
documents we haven  t even seen yet.  They
don  t like the ones w attached in example.
And all we wanted the Court to see was that
2.1 of that provision says all of those
files go.
                    Now, if they have a different contract,
you don  t need to go any further that their
own statements to see if this thing should
go forward.  And all we  re looking at going
forward is limited discovery and what is
the relationship.  You have to go no
further than the contract that counsel
mentioned, which is different than the DSA.
Well, if it is, that proves our point.  And
of don  t have to look any further than not
relevant at this point.
                    Why not?  Because we haven  t had the
opportunity to do discovery.  You can  t

take affidavits at this point that we

haven t had the chance to cross examine and

say this case should close, this case

should shut down. All we re asking is give

us a limited chance to do discovery. Let

us look at the discovery, let s look at the

contract, let s lookat the interface and

see where we are. It s as simple as that.

You don t have to strike Mr. Wooten s

affidavit, take the documents that are

self-authenticating. If there are

gratuitous that are non-fact evidence

strike those.

But you don t need togo through that

exercise, because what he attaches is self-

authenticating. It snot hearsay, it s

outside if the rule. Except that evidence,

we ve got enough to go forward. But you

don t even need to get there. All you need

to get to is it s premature, it s too

early, they ve said it. That s all we need

to go to today. That s why you don t have

these proceedings this early - - that s why

you don t do these type of summary

judgments at this stage in the proceedings.

1     JUDGE MAHONEY:  I m aware that that s
2     your argument, also.
3          MR. HARTLEY:  Judge.
4          JUDGE MAHONEY:  Okay.  Very briefly you
5     can respond just to that, nothing new.
6          MR. HARTLEY:  Okay.  It s not - - I
7     didn t say it was premature.  They ve got
8     an obligation under the third prong of
9     705(6) to tell you why they didn t get this
10    information earlier.  This was - - this
11    started for purposes of Your Honor as a
12    relief from stay motion.
13         Mr. Blackshear who wants to be counsel
14    with the Plaintiffs in this case on the
15    adversary proceeding was involved.  It was
16    continued multiple times.  They had an
17    opportunity - - they had an opportunity to
18    find out what was going on with this one,
19    they had multiple opportunities and they
20    didn t do it.
21         They have not - - he just stood here
22    and told you he hadn t satisfied the third
23    prong of 705(6)(c).  He hadn t - - he just
24    stood here and said they haven t done it.
25    Under the rules, Your Honor, you have to

-42-

```
 1          grant the summary judgment motion.
 2               JUDGE MAHONEY:  I - - I - - I hear you.
 3               MR. PAUL:  Can I point out one thing?
 4               JUDGE MAHONEY:  Very briefly.  Because
 5          I let him go, so you can both respond, yes.
 6               MR. PAUL:  Your Honor, they  re the
 7          Plaintiffs.  This is their case.  They can
 8          prosecute it how they want to.  But they
 9          haven  t requested anydiscovery.  They
10          could have served discovery requests at the
11          outset with the issuance of the Complaint.
12               And he is correct, you don  t need to go
13          any further than our statements.  LPS
14          wasn  t involved withMs. Meeker  s
15          bankruptcy.  That  s it.
16               JUDGE MAHONEY:  Okay. All right.  I
17          thank all of you.  It  s under advisement.
18          You  ll hear as soon a I can get it done.
19          Thank you very much.
20                    (Off the record)
21
22
23
24
25
```

                                                      -43-

1    I, Donna Duggan, hereby certify that the
2  preceding hearing was typed from a digital recording
3  furnished by the Office of the United States
4  Bankruptcy Court, Southern District of Alabama.

5

6                              /s/   Donna Duggan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-44-